**LOCKHEED MARTIN CORPORATION, Plaintiff,**

v.

**NETWORK SOLUTIONS, INC., and Does 1–20, Defendant.**

**No. CV 96–7438 DDP (ANx).**

United States District Court, C.D. California.

Sept. 26, 1997.

David W. Quinto, Grady L. White, Quinn, Emanuel, Urquhart & Oliver, Los Angeles, CA, for Plaintiff.

Edward G. Poplawski, Suzanne R. Jones, Pretty, Schroeder & Poplawski, Los Angeles, CA, for Defendant.

### Order Denying Defendant's Motion to Partially Dismiss Plaintiff's Claims and Related Relief

PREGERSON, District Judge.

Plaintiff Lockheed's motion for leave to amend its complaint came before this Court on September 15, 1997. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court denies the motion.

### I. Background

For over 50 years, Plaintiff Lockheed Martin Corporation ("Lockheed") has operated "Skunk Works," an aerospace development and production facility. Lockheed owns the federally registered "SKUNK WORKS" service mark.[1]

In March 1996, Lockheed learned that Network Solutions, Inc. ("NSI"), the exclusive registrar of Internet domain names, had granted domain name registrations for "SKUNKWORKS.NET" and "SKUNKWORKS.COM" to Clayton Jacobs of Santa Monica, California, and Seng-poh Lee of Cheshire, Connecticut, respectively. Lockheed contacted both individuals and advised them that their domain name registrations infringed Lockheed's federally registered SKUNK WORKS mark.[2]

---

1. On September 18, 1973, Lockheed registered the mark SKUNK WORKS on the Principal Register of the United States of America as a service mark pursuant to Certificate of Registration No. 968,861 for "engineering, technical, consulting, and advisory services with respect to designing, building, equipping, and testing commercial and military aircraft and related equipment." The mark was re-registered on July 14, 1981.

2. After Lockheed contacted Lee, Lee asked NSI to delete his domain name registration. However, after NSI deleted Lee's registration, Lockheed

On May 7, 1996, Lockheed sent NSI a letter advising NSI that it was the owner of the SKUNK WORKS mark and requesting that NSI cease registering domain names that referred to or included the names "Skunk Works" or "Skunkworks" or otherwise infringed on Lockheed's mark. Lockheed also requested that NSI provide Lockheed with a list of registered domain names that contain the words "skunk works" or any variation thereof. NSI did not respond to the letter. Lockheed sent a second letter to NSI on June 18, 1996, informing NSI that it believed that the domain name registrations "SKUNKWORKS.COM" and "SKUNK-WORKS.NET" infringed Lockheed's service mark and demanding that NSI withdraw these registrations.

On September 18, 1996, NSI sent Lockheed a letter stating that it could not provide Lockheed with a list of all domain names similar to "SKUNK WORKS." NSI also informed Lockheed that if Lockheed wanted NSI to take action concerning infringing domain names, it should do so in accordance with NSI's September 9, 1996 version of its Domain Name Dispute Policy.

On October 22, 1996, Lockheed brought this action against NSI for false designation of origin, federal and state trademark dilution, contributory infringement of a service mark and declaratory relief under the Declaratory Judgments Act. Lockheed alleges that NSI diluted and contributed to the infringement of Lockheed's SKUNK WORKS mark by registering four Internet domain names similar or identical to the mark.

On March 19, 1997, the Court denied NSI's motion to dismiss for failure to join the SKUNK WORKS–type registrants as indispensable parties under Federal Rule of Civil Procedure 19(b).

On July 21, 1997, NSI filed a motion for summary judgment on all claims. On August 6, 1997, the parties entered into a stipulation with the approval of the Court to continue the hearing on the summary judgment motion until October 6, 1997 to give Lockheed time to prepare its opposition. (Stipulated Order Setting Briefing Schedule and Hearing Date 2:25–27.)

On August 19, 1997, Lockheed filed the instant motion for leave to amend its complaint. Lockheed seeks to add a new claim for "contributory dilution" of the SKUNK WORKS trademark. In addition, the proposed amended complaint adds allegations that NSI has registered nine additional Internet domain names that are similar to SKUNK WORKS since the original complaint was filed.

## II. Discussion

 Federal Rule of Civil Procedure 15(a) allows a party to amend its complaint by leave of the court at any time, and such leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Denial of leave is within the court's discretion. In deciding whether to grant leave to amend, the court may consider undue delay, prejudice to the opposing party, bad faith or dilatory motive, futility of the amendment, and whether the party has previously amended its pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995). These factors are to be applied with a view toward "the strong policy in favor of allowing amendment." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994).

### A. Undue Delay

 "Undue delay is a valid reason for denying leave to amend." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1454 (9th Cir.1990). Delay by itself, however, does not always justify denying leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186–87 (9th Cir. 1987). Considerable delay with no reasonable explanation is relevant where a proposed amendment would cause prejudice to the other party or would significantly delay resolution of the case. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir.1990).

did not seek to register the "SKUNK-WORKS.COM" domain name for itself, thus permitting the "SKUNKWORKS.COM" domain name to remain unregistered until a new registrant, Grant Smith, filed an application on December 19, 1996. Lockheed claims that NSI did not notify Lockheed that it had withdrawn the "SKUNKWORKS.COM" domain name from Lee.

■ Lockheed has chosen to propose its amendment approximately one year after bringing its lawsuit. In their early meeting of counsel in February 1997, the parties stipulated to cut off motions to amend or supplement the complaint on April 1, 1997. By July 21, 1997, the parties had conducted considerable discovery and NSI had moved for summary judgment as to all claims. Lockheed has not attempted to explain why it waited until this advanced stage of the litigation to add its new cause of action.

The new factual allegations involve nine domain name registrations made between October 21, 1996 and March 11, 1997. All of these registrations occurred before the April 1, 1997 amendment cut-off stipulated by the parties, and before the parties had concluded discovery in preparation for the now pending summary judgment motion and possible trial. Lockheed asserts that the new registrations were available to it and the general public immediately on NSI's computer-searchable "Whois" directory of registrations. (Lockheed Reply at 9.) At oral argument, Lockheed stated that it had informed NSI of the new registrations while propounding interrogatories during discovery. Lockheed, therefore, cannot explain the delay by asserting that it only recently discovered new facts. *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994) (giving greater weight to undue delay factor where facts and theories sought to be added were known to moving party early in the litigation).

### B. *Prejudice to the Non-moving Party*

■ It is within the district court's discretion to deny leave to amend where new claims radically shift the nature of the case, requiring the opposing party to engage in substantial new discovery or to undertake an entirely new course of argument late in the case. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir.1990) (affirming denial of leave to amend where party sought to add federal racketeering claims late in litigation); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir.1991) (affirming denial of

leave where defendant would have been unreasonably prejudiced by addition of new claims only four months before trial); *Kaplan*, 49 F.3d at 1370 (affirming denial where parties had already engaged in voluminous discovery).

■ Lockheed asserts that its amendment will have no effect on the pending summary judgment proceeding and will require no new discovery. Lockheed argues that because the existing contributory infringement cause of action shares an element with the proposed contributory dilution cause of action, the two claims depend on the same set of facts, and therefore can be evaluated together for summary judgment purposes. (Lockheed Reply at 3.) The plaintiff in a contributory infringement case must show that the defendant either induced a third party to infringe the plaintiff's trademark or continued supplying a product after it knew or had reason to know the product would be used to infringe the plaintiff's mark. *Inwood Laboratories, Inc. v. Ives Laboratories*, 456 U.S. 844, 853–54, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). The same inducement/supply element would be necessary for liability on a contributory dilution theory.[3] Lockheed argues that because both claims turn on the inducement/supply element, the new cause of action for contributory dilution would be subject to the existing summary judgment motion, and if it survived summary judgment would go to trial with no additional discovery. (Lockheed Reply at 3, 7.)

■ Lockheed's argument ignores the elements that contributory infringement and dilution do not share. To make out its claim for contributory dilution against NSI, Lockheed will have to prove that the third parties—the registrants of domain sites—diluted Lockheed's trademark. This opens a substantial new area of factual inquiry as to how the *registrants* used their SKUNKWORK-type Internet sites, and the degree to which such uses might have tarnished Lockheed's reputation or blurred the distinctiveness of its mark. Discovery would also be necessary on the factual question of whether the regis-

---

**3.** That is to say that the same ultimate facts are necessary if such a cause of action exists, which

is by no means certain.

trants are even using the SKUNK WORKS name as a trademark because where there is no use as a trademark there can be no dilution. 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24:103 (1996). Because such facts would not have been relevant to the existing causes of action, NSI would not have conducted discovery as to such matters.

As discussed above, Lockheed has shown no reason why it could not have brought the contributory dilution claim earlier in this lawsuit, when NSI could have fashioned its discovery and motion strategy to respond effectively to it. The addition of a claim which depends on different facts, and requires new discovery this late in the litigation would prejudice NSI. *Texaco*, 939 F.2d at 794.

### C. *Dilatory Motive*

 Although the Federal Rules of Civil Procedure favor a liberal approach to amendments, amendments may not be used as a device to prevent speedy and efficient resolution of cases. Where, as here, a party proposes amendments while a summary judgment motion is pending, the court must look closely to determine whether the proposed amendment is a tactic to prevent termination of the case on summary judgment. *Schlacter–Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir.1991).

NSI has sought summary judgment on the existing dilution claim based on the fact that it has not used the *SKUNK* WORKS mark in commerce. (NSI Memo of Points and Authorities in Support of Summary Judgment ("NSI Summary Judgment Memo.") at 18–20.) *See* 15 U.S.C. § 1125(c) (prohibiting "use in commerce" in such a way as to dilute famous mark); *Panavision International, L.P. v. Toeppen*, 945 F.Supp. 1296, 1303 (C.D.Cal.1996) (holding that domain name registration is not use in commerce). NSI has sought summary judgment on the existing contributory infringement claim based on Lockheed's lack of evidence to show that it induced anyone to infringe or continued to supply a product it knew or had reason to know was being used to infringe. (NSI Summary Judgment Memo. at 22.)

Because the existing claims did not make the registrants' possible diluting conduct relevant to the case, such conduct would have been beyond the scope of discovery even if NSI could have somehow anticipated Lockheed's attempt to add the contributory dilution claim this late in the litigation. If it were allowed to amend now, Lockheed will have effectively evaded what could have been the termination of its lawsuit on summary judgment.

### D. *Futility of the Amendment*

 Courts ordinarily do not consider the validity of the proposed amendment in deciding whether to grant leave to amend. Leave to amend may be denied, however, if the proposed amendment is futile or subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991). A proposed amendment is futile if no set of facts can be proved under the amendment which would constitute a valid claim. *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988).

 Contributory dilution is a new theory of liability. There are no reported cases setting forth its elements. Lockheed's sole authority for such a cause of action is *Kegan v. Apple Computer, Inc.*, 42 U.S.P.Q.2d 1053, 1996 WL 667808 (N.D.Ill.1996). *Kegan* does not analyze the cause of action for contributory dilution. After analyzing the dilution claim and denying defendant's motion for summary judgment, the opinion says this and only this about contributory dilution:

> Because [Plaintiff] alleges both contributory infringement and contributory dilution in Count IV, Apple's motion for summary judgment as to that count is denied to the extent that genuine issues of material fact exist as to whether Apple's encouragement of other software developers to create software in the GUIDE family constitutes contributory dilution, but is granted to the extent that it alleges contributory infringement.

*Id.* at 1062. *Kegan* cites no authority for the elements of contributory dilution. Accepting its brief analysis of the problem, the Court infers that, like contributory infringement, contributory dilution requires a showing of inducement or supply. *Inwood*, 456 U.S. at

853–54, 102 S.Ct. at 2188. The defendant must have either induced another's conduct or continued to supply a product after the defendant knew or should have known that it was being used to dilute the plaintiff's trademark.

 To succeed on a contributory dilution claim, Lockheed would have to show that NSI encouraged or induced the SKUNK WORKS-type registrants to engage in activities that diluted Lockheed's mark, or that NSI continued to supply a product—presumably domain name registrations—after it knew or should have known that the registrants were diluting the mark.

The Supreme Court has indicated that attempts to impose vicarious liability through contributory trademark infringement must meet a "narrow standard." *Sony Corp. v. Universal City Studios,* 464 U.S. 417, 439 n. 19, 104 S.Ct. 774, 787 n. 19, 78 L.Ed.2d 574 (1984). An allegation of mere negligence in supplying a product used to infringe does not meet this standard. *Inwood,* 456 U.S. at 854 n. 13, 102 S.Ct. at 2188 n. 13 (disapproving standard under which defendant would be liable for contributory infringement if defendant "could reasonably anticipate" use of product to infringe). Likewise, a claim for contributory infringement must fail if it depends on imposing upon NSI an affirmative duty "to police the mark for a trade name owner." *MDT Corp. v. New York Stock Exchange, Inc.,* 858 F.Supp. 1028, 1034 (C.D.Cal.1994) (granting summary judgment in favor of defendant stock exchange because its registration of stock symbols imposed on it no affirmative duty to police registrants' possible infringement of trademarks). If the standard is this narrow for contributory infringement, where vicarious liability is grounded in a direct injury to the trademark owner's property right, the standard should certainly be at least as narrow for contributory dilution, which is grounded in "a much more subtle and evasive concept of injury to a mark...." 3 McCarthy § 24:70.

### III. Conclusion

Lockheed's unexplained delay in adding the new allegations and new cause of action is undue in light of Lockheed's prior knowledge of the underlying facts. Allowing the addition of these claims now, after extensive discovery and with summary judgment pending, would unduly prejudice NSI's defense of the lawsuit. Although Lockheed's proposed contributory dilution claim may not be futile, given the unlikeliness that NSI domain name registration could amount to inducement of dilution or knowing supply of a product used to dilute, the claim would be tenuous at best. Such a tenuous claim does not merit the delay and prejudice its belated addition to the lawsuit would cause. *Morongo Band,* 893 F.2d at 1079 ("In light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay, we conclude that the district court did not abuse its discretion in denying leave to amend.")

Based on the foregoing, the Court denies Lockheed's motion to for leave to amend.

**IT IS SO ORDERED.**