### In re FRITZ COMPANIES SE-CURITIES LITIGATION.

### No. C 96–2712–MHP.

United States District Court,
N.D. California.

Aug. 27, 2003.

---

William S. Lerach, Alison M. Tattersall, Helen J. Hodges, Milberg Weiss Bershad Hynes & Lerach LLP, Edward M. Gergosian, Barrack Rodos & Bacine, San Diego, CA, Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, Robert C. Finkel, Wolf Popper LLP, Jonathan M. Plasse, Goodkind Labaton Rudoff & Sucharow LLP, New York City, Richard S.

Schiffrin, Schiffrin & Barroway LLP, Bala Cynwyd, PA, for Plaintiffs.

David M. Furbush, Tower C. Snow, Brobeck Phleger & Harrison, Palo Alto, CA, John H. Kanberg, Orrick Herrington & Sutcliffe LLP, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER

### Plaintiffs' Motion for Leave to Amend Complaint

PATEL, Chief Judge.

Plaintiffs bring this shareholder class action against Fritz Companies, Inc. and various individual officers and directors (collectively "Fritz"). The complaint contains claims of securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78j(b), related Rule 10–5, and controlling persons allegations under Section 20 of the SEA, 15 U.S.C. § 78t(a). After allowing plaintiffs to file First and Second Amended Complaints in 1997, this court dismissed the action with prejudice for failure to state a claim. *In re Fritz Co. Sec. Litig.*, No. C–96–2712 (N.D.Cal. March 5, 1998) (Patel, J.). In 1999, the Ninth Circuit summarily vacated the order for reconsideration in light of its decision in *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999). Now before the court is plaintiffs' motion for leave to amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Having considered the arguments of the parties, and for the reasons set forth below, the court rules as follows.

### BACKGROUND [1]

Fritz was a transportation logistics business in San Francisco that provided information services for importers and exporters worldwide. In April 1995, Fritz and

1. All facts are taken from plaintiffs' Second Amended Complaint unless otherwise noted.

Intertrans—an air and ocean freight forwarding and transportation logistics business—filed a Joint Proxy and Prospectus for merger/acquisition. In May 1995, Fritz acquired Intertrans with the approval of both companies' shareholders. As a result of the merger, Fritz issued a Form 10–K for the January–May transitional period, filed in August 1995. This filing marks the beginning of the Class Period, which runs from August 28, 1995 to July 23, 1996. The Form 10–K included a charge of "merger-related expenses" of nearly $30 million and indicated that expenses could be higher and could not be conclusively calculated "until the operational and transition plans are completed." Proxy, Herrara Dec. Exh. B, at 22.

In April 1996, Fritz released a report of financial operations for its third fiscal quarter, claiming revenue of $274.3 million, net income of $10.3 million, and earnings per share of 29 cents. In August 1996, Fritz filed an amended report on the Form 10–K for the third quarter with adjustments as follows: revenue was reduced by approximately $26 million, net revenue by approximately $8 million, and pre-tax income by approximately $0.9 million. Several million dollars of previously unaccounted for operating expenses and logistics services were also recognized in this report. Fritz claimed that much of the cost was necessary because they "underestimated final costs related to the full integration of our two companies" and "also erred in adopting the Intertrans accounting system, as it has proved inadequate, especially given [their] rapid growth." Herrera Dec. Exh. D.

Fritz reported a loss of $3.4 million, or 10 cents per share, for the fourth quarter 1996. The stock price dropped by 55% in a single day and never fully recovered. Plaintiffs allege that Fritz was aware of the impending collapse of the company and that, by engaging in improper accounting practices, Fritz drastically inflated revenue calculations for the third quarter. They claim that Fritz (1) improperly inflated revenues by recognizing revenue on sales where collection was not reasonably expected, or the services were not agreed to or performed by the customer; and (2) that Fritz failed to properly present its operating expenses, including freight costs, bad debt and software development costs, in its financial statements, which made Fritz appear more profitable and growing than was actually the case.

Plaintiffs also allege that, although auditors had informed Fritz that severe accounting and internal controls problems made Intertrans' system incapable of providing accurate financial information, it was not until fifteen months after the merger that Fritz disclosed these controls problems. During those fifteen months, Fritz had represented the company as flourishing financially, due in part to the successful integration of the Intertrans system into its company. Plaintiffs allege that these representations materially misstated the truth that Fritz was using unreliable accounting information and accounting practices in order to artificially inflate Fritz's stock for the benefit of the major shareholders and CEO.

Plaintiffs' filed suit in state and federal court soon after Fritz's collapse, filing their first complaint with this court in July 1996. They subsequently consolidated their actions and filed a First Amended Complaint in January 1997. In April 1997 plaintiffs filed a Second Amended Complaint ("SAC"), which this court dismissed with prejudice. The Ninth Circuit summarily vacated the order for reconsideration in light of its intervening decision in *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir.1999). Plaintiffs now move to amend their complaint.

*LEGAL STANDARD*

■ Fed.R.Civ.P. 15(a) provides a party may amend a pleading only by leave of the court after the filing of a responsive pleading, unless the opposing party consents to the amendment. Rule 15(a), however, also provides that leave to amend "shall be freely given when justice so requires." "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon*, 316 F.3d 1048, 1051 (9th Cir.2003). The Supreme Court has set forth several factors that a district court should evaluate in determining whether justice requires granting leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). The factor carrying the greatest weight is whether the proposed amendment will unduly prejudice the opposing party. *Id.* The party opposing the amendment bears the burden of showing prejudice. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir.1987).

■ A district court's discretion over an amendment is "especially broad" where the court has already given plaintiff one or more opportunities to amend the complaint. *Id.* at 186 n. 4; *see also Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir.1996) (finding previous amendments and the futility of proposed amendment warranted denial of leave to amend). It also may be appropriate to deny leave to amend where the proposed amendment "merely restates the same facts using different language, or reasserts a claim previously determined." *DCD Programs*, 833 F.2d at 188 (quoting *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir.1983)).

*DISCUSSION*

Plaintiffs' Proposed Third Amended Complaint ("TAC") contains claims of securities fraud under Section 10(b) of the SEA, 15 U.S.C. § 78j(b), Rule 10b–5, and controlling persons allegations under Section 20 of the SEA, 15 U.S.C. § 78t(a). Plaintiffs move for leave to amend the SAC in light of the heightened pleading standard under the Private Securities Litigation Reform Act ("PSLRA") and the Ninth Circuit ruling in *Silicon Graphics*. In considering the motion, this court will examine the relevant factors in turn. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227.

A. *Undue Prejudice*

■ Undue prejudice to the opposing party carries the greatest weight in the evaluation of a motion for leave to amend. *Eminence*, 316 F.3d at 1052. Indicators of prejudice include a need to reopen discovery or the addition of complaints or parties. *Lockheed*, 194 F.3d at 986 (noting that the addition of complaints not only demonstrated prejudice, but might also indicate bad faith by the movants). Absent a showing of prejudice by the opposing party, or a strong demonstration of any of the remaining factors, there is a presumption in favor of granting leave to amend. *Eminence*, 316 F.3d at 1052.

■ In the instant action, defendants claim the following as evidence of prejudice: the expense of briefing another round of motions, changes in circumstances over the seven years since the beginning of litigation, certain defendants having left the company, fading memory over that expanse of time, and a takeover of the Fritz company in 2001. Def. Opp. Mot. Leave File Third Amend Compl., 6:2–8. The expenses affiliated with a new

round of motions are not occasioned by plaintiffs' delay. Defendants would have had to brief a new round of motions if plaintiffs had moved to amend three years ago, and it would certainly have been appropriate to amend given the new standards laid down in *Silicon Graphics.* While the fading of witnesses' memory over time and the changes to the Fritz company could perhaps prejudice defendants, they fail to show specifically how it would do so. *See DCD Programs,* 833 F.2d at 187 (holding that the party opposing the amendment bears the burden of showing prejudice). Given the inordinate delay, however, this factor cannot be said to weigh heavily in either direction.

### B. *Undue Delay*

In evaluating a motion for leave to amend, a substantial delay on the part of the moving party, while not in itself sufficient to warrant denial, is nevertheless relevant. *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990) (acknowledging the two year delay in filing the motion for leave to amend as "enter[ing] the balance" of the denial); *see also Lockheed Martin Corp. v. Network Solutions Inc.,* 194 F.3d 980, 986 (9th Cir.1999) (finding that a motion to amend filed after several months with no reason given for the delay supported the district court's denial of leave). Delay is especially damaging to the plaintiff's motion where the facts were previously available and no reason is given for their exclusion from antecedent complaints. *Chodos v. W. Pub. Co. Inc.,* 292 F.3d 992, 1003 (9th Cir.2002); *see also Swanson v. United States Forest Serv.,* 87 F.3d 339, 345 (9th Cir.1996) (finding that plaintiff's inexplicably late filing of motion to amend warranted denial of the motion).

In the instant action, plaintiffs have not offered a reasonable explanation for the extraordinary lapse between the dismissal of their SAC and the filing of the motion now before the court. The Ninth Circuit remanded this court's dismissal over three years ago for reconsideration in light of *Silicon Graphics.* Wyman Dec., Exh. 14. Apart from filing a single request for a status conference in April 2001, which appears to have been overlooked by the court, plaintiffs have made no other efforts to bring this case to the court's or defendants' attention or to pursue the litigation, until filing the motion now before this court. Wyman Dec., Exh. 16. While plaintiffs cite to *Eminence* as a reason for filing their motion at this time, that decision merely restated the standard for evaluating motions for leave to amend in securities actions. *See Eminence,* 316 F.3d at 1052 (finding that the liberal principles of Rule 15 are "especially important in the context of the PSLRA"). This finding does not change the standard for granting motions for leave to amend and therefore does not provide plaintiffs with a valid justification for waiting three years to file their motion.

Furthermore, plaintiffs have not indicated that any of the information available to them in the proposed Third Amended Complaint ("TAC") was not available to them when they submitted their SAC. Rather, they state that the TAC is "more narrowly focused" than the previous complaints. Mot. Leave Amend Compl., 6:24. Plaintiffs had ample time within which to formulate a focused claim previous to and after *Silicon Graphics,* a holding which only heightened the standard by which this court must consider PSLRA pleadings. Plaintiffs' single request for a case management conference, with no subsequent attempts to schedule any meetings with opposing counsel or this court for two years, could in fact support a conclusion that plaintiffs had dropped their case.

While not dispositive, the relatively unexplained delay between the SAC and

the TAC weighs against plaintiffs' motion for leave to amend.[2] *See Chodos*, 292 F.3d at 1003 (finding that the district court properly denied motion to amend where the facts had been available to plaintiff from the outset); *see also Swanson*, 87 F.3d at 344 (finding that a delayed motion to amend, without any explanation for the delay, warranted denial).

## C. *Futility and Repeated Failure to Remedy Defects in the Complaint*

■ The general rule that parties are allowed to amend their pleadings does not apply to actions in which the amendment would be an exercise in futility, or in which the amended complaint would also be subject to dismissal. *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1297 (9th Cir.1998) (finding that the amended complaint failed to state a claim under the SEA and therefore denial of the motion was appropriate). The court's discretion to reject amendments as futile is particularly broad where plaintiff has been given leave to amend previously. *Sisseton–Wahpeton*, 90 F.3d at 355 (finding that the proposed claim was similar to the claims asserted in a prior amendment, which weighed conclusively in favor of denying the motion); *see also In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir.2002) (finding denial of motion to amend a PSLRA claim proper where plaintiffs had three opportunities to plead a case, but failed to state any additional facts in the proposed amendment).

■ In the context of a PSLRA securities litigation—and the demanding standards for pleading a case with suffi-cient specificity—the Ninth Circuit generally permits the amendment if the allegations are not frivolous and if plaintiffs appear to have a reasonable chance of stating a claim if given another opportunity. *Eminence*, 316 F.3d at 1053. The court can deny the motion to amend on the basis of futility either if the amended complaint would be dismissed under Rule 12(b)(6), *Soghomonian v. United States*, 82 F.Supp.2d 1134, 1141 (E.D.Cal.1999), or if plaintiff fails to plead with requisite specificity under Rule 9(b). *See, e.g., Moore v. Kayport Package Express*, 885 F.2d 531, 540–41 (9th Cir.1989). Therefore, in order to analyze the potential futility of the TAC, this court must determine if it withstands Rules 12(b)(6) and 9(b), or if it suffers from the same inadequacies as the SAC. The court is also mindful of the fact that *Silicon Graphics* raised the bar and requires more rigorous pleading than was demanded when this court dismissed the SAC.

■ In order to state a claim under Section 10(b) and Rule 10b–5 of the SEA,[3] plaintiffs must allege facts establishing the following in connection with the purchase or sale of a security: "(1) a false statement or omission of material fact made by the defendant, (2) with scienter, (3) upon which plaintiff justifiably relied, and (4) the reliance proximately caused damage to the plaintiff." *In re The Vantive Corp. Sec. Litig.*, 110 F.Supp.2d 1209, 1215 (N.D.Cal. 2000) (Orrick, J.) *aff'd in relevant part* 283 F.3d 1079 (9th Cir.2002). Where the pleadings are based upon information and

---

**2.** Although this court does not find plaintiffs' unaccountable procrastination to be direct evidence of bad faith, that they appear to have protracted their duty to pursue the action in the hopes of a change of law is undoubtedly unsavory.

**3.** Plaintiffs also assert a second count, alleging violation of Section 20(a) of the SEA.

While this count concerns controlling persons in a securities exchange action, it relies upon the same set of allegations as the first count. Pl.'s TAC ¶ 93. Therefore, this court will analyze the sufficiency of the TAC in terms of its ability to state a claim under 10(b), without which no count under 20(a) could be made.

belief, these elements must be met by stating with particularity facts giving rise to a "strong inference of, at a minimum, deliberate recklessness." *Silicon Graphics,* 183 F.3d at 977 (citing 15 U.S.C. § 78u–4(b)(2)). This means alleging the specific content of documents upon which plaintiff relies, identifying who prepared and reviewed those documents, and setting out "sources of . . . information with respect to the reports." *Vantive,* 110 F.Supp.2d at 1215 (quoting *Silicon Graphics,* 183 F.3d at 985). If plaintiffs fail to plead with particularity either the alleged misleading statements or scienter, their complaint must be dismissed. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.,* 320 F.3d 920, 931–32 (9th Cir.2003) ("*America West*"); *see also Ronconi v. Larkin,* 253 F.3d 423, 429 (9th Cir.2001) (holding that analysis of falsity and scienter can be unified for purposes of a PSLRA inquiry).

In *Vantive,* plaintiffs claimed that defendants manipulated accounts in order to artificially inflate revenues, thereby deceiving stockholders and violating Section 10(b). *Vantive,* 283 F.3d at 1089. In their complaint, plaintiffs alleged that Vantive knew its revenues would be lower than what was represented, that Vantive secretly changed its revenue recognition policies during a critical period, and that it made false forecasts concerning future revenue. *Id.* at 1089–91. The court found that while plaintiffs did allege incorrect statements regarding recognition of revenue by defendants, they failed to allege specific contemporaneous conditions known to the defendants that would strongly suggest that the defendants understood such recognition would result in overstated revenues. *Id.* at 1091.

 Plaintiffs in the instant action have likewise failed to allege with sufficient particularity the facts necessary to state a claim under the PSLRA standard.

In order to establish false and misleading statements, plaintiffs must allege (1) specific factual conditions contemporaneous with false statements, which conditions (2) were known by defendants. *Vantive,* 283 F.3d at 1091. This court, however, cannot find either of these elements based upon plaintiffs' vague and conclusory allegations. To establish Fritz's accounting problems, for example, plaintiffs allege the following:

> That upon attempting to integrate the operations of Intertrans into Fritz beginning in mid–2/96, Fritz had encountered serious and persistent difficulties in doing so, which difficulties had worsened over time such that the Intertrans acquisition was actually hurting Fritz's business by resulting in excessive costs and inefficiencies and not benefitting its business or profit margins as represented; [t]hat Fritz's effort to adopt Intertrans management information and accounting systems for the combined entity was unsuccessful and had failed in part . . . .

TAC ¶ 37. This allegation, typical of the allegations throughout the TAC in terms of factual specificity, provides no basis for this court to find that defendants were in fact experiencing these difficulties. *See Silicon Graphics,* 183 F.3d at 985 (requiring specific sources for allegations under the PSLRA). No factual proof of Fritz's difficulties has been alleged; nor are any specified sources relied upon to establish the conclusions above that the difficulties had worsened or that the merger was unsuccessful.

Furthermore, in the section purportedly addressing Fritz's knowledge, TAC ¶¶ 21–27, this court cannot find one factual allegation pertaining to defendants' knowledge of the falsity of their statements. A typical allegation in this section reads, "Defendants knew or recklessly disregarded that

Fritz's financial statements for the quarter ended 2/29/96 materially overstated the Company's results." TAC ¶ 24. But nowhere in that section do plaintiffs indicate the specific content of documents upon which the allegations rely; nowhere do they point to sources of information for their reports. *See Silicon Graphics*, 183 F.3d at 985. Statements that Fritz's reported one-time merger costs "significantly understated the cost of full integration of Fritz and Intertrans," TAC ¶ 44, or that Fritz's financial statements "were artificially and improperly inflated," TAC ¶ 41, fail to establish with detailed, verifiable facts, that defendants knew the costs they reported were inaccurate.

Perhaps the best support that plaintiffs find in this section of the TAC is from Fritz's restatement of financial results, which they claim shows that Fritz "has admitted that each document publishing the original financial result for the quarter ended February 29, 1996 contained an untrue statement of material fact." *Id.* ¶ 26, 46. Under Accounting Principles Board Opinion No. 20, plaintiffs allege that restatements are only permitted to correct material accounting errors that existed at the time the financial statements were issued. *Id.* ¶ 25. This allegation proves at best that defendants made a mistake, not that they had intentionally deceived plaintiffs.[4] Furthermore, the publication of a false statement cannot rise to the PSLRA standard without some precise, verifiable allegations concerning defendants' knowledge of the actual circumstances at the time of the statement. *See Vantive*, 283 F.3d at 1091.

▉ The standard for pleading scienter in PSLRA cases is a strict one, requiring allegations sufficient to create a "strong inference of deliberate recklessness." *Silicon Graphics*, 183 F.3d at 980. A finding

that scienter has been inadequately alleged is sufficient in itself to dismiss the case. *Vantive*, 283 F.3d at 1091 ("Because scienter has not been adequately alleged, we need not dwell on the question whether falsity has been pled with particularity here"). Although plaintiffs maintain that the allegations in paragraphs 82–86 of the TAC "plead in exacting detail the direct and corroborating facts establishing defendants' knowledge." Mot. Leave Amend Compl., 7:10–11, they fail to point to any of the specifics—the who, when, where, or why—that might give their claims some foundation. Paragraph 83 of the TAC illustrates the type of shortcomings which are manifest throughout:

> Contrary to SEC rules, Fritz failed to implement and maintain an adequate internal accounting system. Since 94, at the latest, Fritz management had been aware of Fritz's inadequate internal accounting and control systems. These already inadequate internal controls problems were worsened by the Intertrans acquisition, which adversely impacted the Company's ability to accurately determine and then report the financial results from its air freight and other divisions.

Paragraph 83 lacks any indication of source, it contains no possibility for verification, and alleges defendants' knowledge with no detail whatsoever. *See Vantive*, 110 F.Supp.2d at 1215 (requiring clear sources of information for PSLRA pleading). This court cannot find a "strong inference of deliberate recklessness" without detailed, verifiable factual allegations to support plaintiffs' claims.

Because plaintiffs have failed to meet the PSLRA pleading standard throughout the TAC, all allegations taken together fail to give rise to a strong inference of delib-

---

4. In fact, plaintiffs concede that the mere fact of a restatement might not be sufficient to show false, misleading statements. Pl.'s Opp. Def.'s Mot. Dismiss, 11 n. 16.

erate recklessness. *See America West,* 320 F.3d at 945 (holding that the allegations must be considered in their totality in determining whether plaintiffs have met the PSLRA standard). Many of plaintiffs' allegations of fraud were clearly identified as speculative, forward-looking promulgations by defendants, TAC ¶¶ 29, 31, 34, 35, which give rise to no cause of action under the SEA without proof of actual knowledge. 15 U.S.C. § 78u–5(c)(1)(A)(I) (stating that a person shall not be liable for any "forward-looking statement" that is identified as such, and is accompanied "by meaningful cautionary statements"). Furthermore, as discussed above, not one of the paragraphs of the TAC identified in the futility section of plaintiffs' Motion for Leave to Amend Complaint is pleaded with sufficient particularity under the PSLRA. *See* TAC ¶¶ 43, 44, 49–70, 82–85.

For the above reasons, the TAC—like the SAC—fails to plead a claim adequately under the PSLRA standard. This alone provides sufficient grounds for denial of leave to amend. *See Soghomonian v. United States,* 82 F.Supp.2d 1134, 1141 (E.D.Cal.1999); *Moore v. Kayport Package Express,* 885 F.2d 531, 540–41 (9th Cir.1989).

Plaintiffs have had three chances to plead a sufficient complaint,[5] three years in which to contemplate the significance of *Silicon Graphics* and muster additional facts to support their claims, and more than enough guidance by the cases following *Silicon Graphics. See Vantive,* 283 F.3d at 1079; *Ronconi,* 253 F.3d at 423; *Eminence,* 316 F.3d at 1048. Nonetheless, they consistently fail to plead their allegations with sufficient particularity and therefore fail to establish the strong inference of deliberate recklessness required

for this court to accept their proposed amendment. Futility is rarely more apparent than this case: *Silicon Graphics* clearly created a more exacting standard under which plaintiffs must plead a securities fraud case; therefore, examining the TAC—which fares no better than its predecessor—in light of *Silicon Graphics* can only serve to highlight the deficiencies of both complaints.

*CONCLUSION*

For the foregoing reasons, plaintiffs' motion for leave to amend their complaint is DENIED and the complaint is DISMISSED with prejudice..

IT IS SO ORDERED.

---

**5.** Plaintiffs maintain that the first two amendments were for consolidation and to incorporate facts previously unavailable to them. Mot. Leave Amend Compl., 6:1–15. Whether

or not they have been given two or more chances to meet the pleading standard is irrelevant at this point, because the TAC clearly fails to do so.